# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

TIMOTHY ALAN CONNELL,

    Plaintiff,

v.                                                                   Case No. 8:19-cv-668-T-02CPT

HOWARD TUCKER; Nurse SANDVIG; Nurse VICTORIES; Sgt. GASKIN; Sgt. JOHNSON; Sgt. DYER; Officer GODWIN; Lt. OSTER; Capt. THOMAS; JAMES ROBINSON; Sgt. PHILIPS; T. RYANS; and Warden T. POYNTER,

    Defendants.
_____/

## ORDER GRANTING
## DEFENDANTS' MOTION TO DISMISS

This matter comes to the Court on Defendants T. Poynter, Howard Tucker, Sergeant Johnson, Officer Robinson, Sergeant Phillips, and Captain Thomas' (collectively, the "Defendants") Motion to Dismiss, Dkt. 59, Plaintiff Timothy Connell's Amended Complaint. Dkt. 49. Plaintiff filed a response. Dkts. 72 & 73. With the benefit of full briefing, the Court grants the Defendants' Motion to Dismiss with prejudice.

## Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the motion, the Court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted).

Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). Courts may also consider documents attached to a motion to dismiss if they are (1) central to the plaintiff's claim; and (2) undisputed or, in other words, the "authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citations omitted).

The decision to grant leave to amend is within the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). But leave to amend will be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, "leave shall be granted unless there is a substantial reason to deny it." *Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 443 (11th Cir. 1985). A substantial reason to deny leave to amend would include when: (1) the amendment

would be prejudicial to the opposing party, (2) there has been bad faith or undue delay by the moving party, (3) the amendment would be futile, or (4) repeated failure to cure deficiencies by amendments previously allowed. *Foman*, 371 U.S. at 182.

## Discussion

Plaintiff brings two claims against the Defendants, one under 43 U.S.C. § 1983 for Eighth Amendment deliberate indifference and the other for violations of title II of the Americans with Disabilities Act. Dkt. 49 at 7, 21. Defendants move to dismiss each of the Plaintiff's causes of actions. Plaintiff argues that his Amended Complaint complies with all procedural requirements and properly states claims for relief that are not barred by qualified immunity.[1] But, for various reasons argued by Defendants, Plaintiff's claims against the Defendants must be dismissed with prejudice.

First, Defendants are entitled to qualified immunity against Plaintiff's section 1983 claims. Qualified immunity protects a government official acting within his discretionary authority from civil lawsuits unless his conduct violates a statutory or constitutional right clearly established when the alleged violation

---

[1] Plaintiff also argues that deficiencies in his Amended Complaint should be ignored because he is a pro se plaintiff. But this is Plaintiff's, at least, seventh lawsuit. *See, e.g.*, *Connell v. Tate*, 3:10-cv-221 (M.D. Fla.); *Connell v. Tucker*, 3:11-cv-470 (N.D. Fla.). Plaintiff is familiar with the procedure of litigation and gets no leeway.

occurred. *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

If an official is engaged in a discretionary function, the burden shifts to a plaintiff to overcome the official's qualified immunity by meeting a two-part test. *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). First, he must show that the defendant violated a constitutional right. *Id.* This step requires a court to analyze the specific constitutional right at issue and decide as a matter of law if the defendant violated such a right. *Id.* at 1156–57. Second, if a violation occurred, he must then show that the right was clearly established at the time of the incident. *Id.* at 1156.

To begin, Defendants were all engaged in discretionary functions. Discretionary functions are actions taken by a government official during "the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988). Plaintiff's allegations all involve actions taken by the Defendants as correctional officers or prison medical staff. So the burden then shifts to Plaintiff to show that Defendants violated a clearly established constitutional right.

Plaintiff alleges that Defendants violated the Eighth Amendment by acting with deliberate indifference towards his medical needs. Dkt. 49 at 6–7. Plaintiff bases this allegation on actions taken by Defendants leading to Plaintiff harming himself. To establish deliberate indifference to a serious medical need a plaintiff must show: (1) that there was an objectively serious medical need; (2) subjectively, that the defendant was deliberately indifferent to that need; and (3) causation between that indifference and the plaintiff's injury. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). For the subjective component of a deliberate indifference claim, a plaintiff must show "that the response made by [the defendant] to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotations omitted).

The "deliberate indifference standard is 'a difficult burden for a plaintiff to meet[.]'" *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990)). Simply put, "mere misdiagnosis or subpar care, even if it rises to the level of medical malpractice, does not constitute deliberate indifference." *Simmons v. Fla. Dep't of Corr.*, No. 5:14-CV-438-0C-39PRL, 2015 WL 3454274, at *10 (M.D. Fla. May 29, 2015). Further, "whether governmental actors should have employed additional diagnostic

techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545.

Taking the evidence in the light most favorable to the nonmovant, Defendants were not deliberately indifferent to Plaintiff's medical problems. Plaintiff alleges that in July 2017, while imprisoned at the Zephyrhills Correctional Institution, he was apprehended by Defendants Phillips and Robinson after leaving his dorm building because of a fire alarm. Dkt 49 at 7. Because he left without permission, Defendants Phillips and Robinson told Plaintiff he was going to be disciplined. *Id.* at 8. In response Plaintiff told them "he had a 'Psychological Emergency'" and was hearing voices that told him the building was on fire and that he would be held down by other inmates or officers and burned to death unless he fled. *Id.* Despite believing that Plaintiff was lying to avoid discipline, the two Defendants escorted Plaintiff to the medical unit. *Id.*

Once at the medical unit, Plaintiff told Defendants Phillips, Robinson, Thomas, Oster, Sandvig, Reedy, Dyer, and Johnson that he was hearing voices and was suicidal. *Id.* Defendant Reedy, a nurse in the medical unit, noted that Plaintiff was taking psychotropic medications. *Id.* at 9. Despite this information, Defendant Oster, the acting officer in charge, decided that Plaintiff was lying to avoid discipline and instructed Defendants Robinson, Phillips, Thomas, Dyer, and

6

Johnson to put Plaintiff in confinement and write a disciplinary report. *Id.* Defendants did no further research into Plaintiff's mental health history. *Id.*

Defendants Robinson, Phillips, Thomas, Dyer, and Johnson took Plaintiff to confinement but when they got there Plaintiff again told them he was suicidal. *Id.* at 10. So they put "extremely tight" ankle shackles on Plaintiff and took him back to the medical unit. *Id.* Plaintiff alleges that the shackles were tight enough to restrict his motion and at one point Defendants had to carry him. *Id.* at 10–11.

Back at the medical unit, Plaintiff again told all of the Defendants present at the time that he was suicidal. *Id.* at 11. It was then decided to place Plaintiff under self-harm observation. *Id.* at 11–12. Defendants Godwin and Gaskin took Plaintiff to a cell that Plaintiff alleges was not properly inspected in accord with self-harm observation procedures and had Defendant undress and put on a "suicide green smock gown." *Id.* at 14. At some point while in the cell, Plaintiff found a small piece of metal and told Defendants Sandvig, Godwin, Gaskin, Johnson, and Victories that he intended to cut himself. *Id.* at 15. These Defendants ignored these threats. *Id.*

Later that night, Plaintiff got a piece of cloth to tie off his arm before he cut himself. *Id.* at 17. But this was noticed by a prison officer who, along with Defendants Sandvig, Dyer, Godwin, Gaskin, Johnson, and Victories, tried to get the string from Plaintiff and, after he began to scratch himself with the metal, get

7

him to hand over the metal. *Id.* at 17–18. Plaintiff eventually did so and had his cuts cleaned by Defendants Victories and Sandvig while in the "day room." *Id.* at 18. Plaintiff does not allege that his cuts required stitches or that he was taken to the medical unit. *Id.* Plaintiff was then placed in five-point restraints and put in isolated self-harm observation. *Id.*

Even if any of the actions by any of the Defendants were inadequate—something not abundantly clear even in Plaintiff's telling of the facts—they surely do not rise to "unnecessary and wanton infliction of pain." *Taylor*, 221 F.3d at 1258. Defendants acted in each instance in which Plaintiff expressed suicidal thoughts, despite believing (perhaps reasonably) that Plaintiff was trying to avoid discipline. Defendants Philips and Robinson escorted Plaintiff to the medical unit when he told them he was hearing voices. Dkt. 49 at 8. Once at the medical unit, Plaintiff expressed suicidal thoughts but Defendant Oster decided that Plaintiff should be sent to disciplinary confinement. *Id.* at 8–9. But, before being placed in confinement, he again expressed suicidal thoughts so Defendants Oster, Robinson, Phillips, Thomas, Dyer, and Johnson brought him back to the medical unit. *Id.* at 10. At that time it was decided that Plaintiff should be placed in self-harm observation and he was then placed in an observation cell in only a "suicide green smock gown." *Id.* at 14. Plaintiff points out that at various points the Defendants

8

actions could have been more thorough. But none of these actions rise to the high standard of deliberate indifference.

Beyond that, there is no allegation that any of the Defendants actually knew about the piece of metal in the cell Plaintiff was placed in. Defendants must have actually known about the excessive risk that Plaintiff would harm himself to be deliberately indifferent. "Proof that the defendant should have perceived the risk, but did not, is insufficient." *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999). Once Defendants actually knew about the metal, they acted to deescalate the situation, remove the metal from the cell, and tended to Plaintiff's injuries. *Id.* 17–18.

Whether the Defendants could have done more to help his mental state that day or to prevent any harm from befalling Plaintiff, each Defendant acted to prevent Plaintiff from harming himself after learning of his suicidal thoughts or his intention to harm himself with the piece of metal in his cell. Because Defendants were not deliberately indifferent to Plaintiff's medical problems, they have not violated Plaintiff's Eighth Amendment rights and are entitled to qualified immunity from these claims. So this cause of action against the Defendants is dismissed with prejudice.

Next, Plaintiff's claim under the ADA must be dismissed. Title II of the ADA prohibits "public entities" from discriminating against a "qualified individual

with a disability." 42 U.S.C. § 12132. Under the ADA a public entity must be just that—an entity. 42 U.S.C.A. § 12131(1) (defining "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority"). Each Defendant is an individual sued in their individual capacities, not an entity. Dkt. 49 at 2–5. Meaning that, Plaintiff cannot—nor could he ever—state a cause of action under the ADA against any of the Defendants. So Ground Two of the Amended Complaint must also be dismissed with prejudice. *See Foman*, 371 U.S. at 182 (noting that futility of amendment would provide grounds for dismissal with prejudice).

      Finally, Plaintiff's Amended Complaint has a section titled "Claims for Relief Nature of the Claims" that alleges all Defendants have violated various statutes, regulations, sections of the federal and Florida state constitution, and other things including the Universal Declaration of Human Rights. Dkt. 49 at 26–48. But Plaintiff has made no allegations in any of these claims against any of the Defendants. In fact, there are no facts alleged at all in this section. The rest of Plaintiff's Amended Complaint properly alleged facts with causes of action, so it would be prejudicial to Defendants to allow Plaintiff the chance to amend this laundry list of mere citations when none of the other allegations present claims that

are plausible on their face. *See Foman*, 371 U.S. at 182. So these claims will be dismissed with prejudice.

## Conclusion

The Court grants Defendant's Motions to Dismiss, Dkt. 59, with prejudice. The Court denies Defendants motion to strike as moot. Dkt. 76. All of the claims against Defendants T. Poynter, Howard Tucker, Sergeant Johnson, Officer Robinson, Sergeant Phillips, and Captain Thomas are dismissed with prejudice and Ground Two (the ADA claim) is dismissed in its entirety. The Clerk is directed to dismiss Defendants T. Poynter, Howard Tucker, Sergeant Johnson, Officer Robinson, Sergeant Phillips, and Captain Thomas from the case.

**DONE AND ORDERED** at Tampa, Florida, on May 7, 2020.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record
Plaintiff, pro se