**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TIMOTHY ALAN CONNELL,

     Plaintiff,

v.                            Case No. 8:19-cv-668-KKM-CPT

T. POYNTER, et al.,

     Defendants.

_____/

# O R D E R

    This matter is before the Court on Defendant Sergeant Gaskin's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law (Doc. 92), Defendant Officer Godwin's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law (Doc. 97), Defendants Paula Sandvig and RN Moises Victores's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 110), and Plaintiff's opposition to the motions. (Doc. 127). Having considered the motions and the response, the Court grants the motions and dismisses the claims with prejudice against Defendants Gaskin, Godwin, Sandvig, and Victores.

## I. FACTUAL BACKGROUND

    Plaintiff alleges that in July 2017, while imprisoned at the Zephyrhills Correctional Institution, he was apprehended by Defendants Phillips and Robinson after leaving his dorm building because of a fire alarm. (Doc. 49 at 7). Because he left without permission,

Defendants Phillips and Robinson told Plaintiff he was going to be disciplined. (*Id.* at 8). In response, Plaintiff told them "he had a 'Psychological Emergency'" and was hearing voices that told him the building was on fire and that he would be held down by other inmates or officers and burned to death unless he fled. (*Id.*). Despite believing that Plaintiff was lying to avoid discipline, the two Defendants escorted Plaintiff to the medical unit. (*Id.*).

Once at the medical unit, Plaintiff told Defendants Phillips, Robinson, Thomas, Oster, Sandvig, Reedy, Dyer, and Johnson that he was hearing voices and was suicidal. (*Id.*). Defendant Reedy, a nurse in the medical unit, noted that Plaintiff was taking psychotropic medications. (*Id.* at 9). Despite this information, Defendant Oster, the acting officer in charge, decided that Plaintiff was lying to avoid discipline and instructed Defendants Robinson, Phillips, Thomas, Dyer, and Johnson to put Plaintiff in confinement and write a disciplinary report. (*Id.*). Defendants did no further research into Plaintiff's mental health history. (*Id.*).

Defendants Robinson, Phillips, Thomas, Dyer, and Johnson took Plaintiff to confinement; but when they got there Plaintiff again told them he was suicidal. (*Id.* at 10). As a result, they put "extremely tight" ankle shackles on Plaintiff and took him back to the medical unit. (*Id.*). Plaintiff alleges that the shackles were tight enough to restrict his motion and, at one point, Defendants had to carry him. (*Id.* at 10–11).

Back at the medical unit, Plaintiff again told all the Defendants present at the time that he was suicidal. (*Id.* at 11). It was then decided to place Plaintiff under self-harm

observation. (*Id.* at 11–12). Defendants Godwin and Gaskin took Plaintiff to a cell that Plaintiff alleges was not properly inspected in accord with self-harm observation procedures and had Defendant undress and put on a "suicide green smock gown." (*Id.* at 14). At some point while in the cell, Plaintiff found a small piece of metal and told Defendants Sandvig, Godwin, Gaskin, Johnson, and Victores that he intended to cut himself. (*Id.* at 15). These Defendants ignored his threats. (*Id.*).

Later that night, Plaintiff got a piece of cloth to tie off his arm before he cut himself. (*Id.* at 17). But this was noticed by a prison officer who, along with Defendants Sandvig, Dyer, Godwin, Gaskin, Johnson, and Victores, tried to get the cloth from Plaintiff and, after he began to scratch himself with the metal, get him to hand over the metal. (*Id.* at 17–18). Plaintiff eventually did so and had his cuts cleaned by Defendants Victores and Sandvig while in the "day room." (*Id.* at 18). Plaintiff does not allege that his cuts required stitches or that he was taken to the medical unit. (*Id.*). Plaintiff was then placed in five-point restraints and put in isolated self-harm observation. (*Id.*).

## II. ANALYSIS

Plaintiff divides the claims in his amended complaint into three parts: (1) an Eighth Amendment deliberate indifference claim; (2) a claim under Title II of the Americans with Disabilities Act (ADA) claim; and (3) a "claims for relief" section in which Plaintiff lists statutes, constitutional amendments, state and federal rules, the Universal Declaration of Human Rights, and UN standards. In their motions to dismiss, Defendants Godwin and Gaskin contend that the amended complaint should be

dismissed because: (1) it fails to comply with the pleading requirements of Rules 8 and 10; (2) it fails to state a claim for relief under the Eighth Amendment to the United States Constitution or the ADA; and (3) Defendants are entitled to qualified immunity. (Doc. 92 at 2–3; Doc. 97 at 3). Defendants Sandvig and Victores contend that the amended complaint should be dismissed because: (1) it fails to state a claim upon which relief can be granted; (2) Defendants are entitled to qualified immunity; (3) Plaintiff's compensatory and punitive damages claims are barred by 42 U.S.C. § 1997e(e);[1] (4) Plaintiff's claims for injunctive and declaratory relief are moot because Plaintiff has been transferred to a different facility; and (5) Plaintiff is not entitled to prosecution of Defendants. (Doc. 110 at 1). Plaintiff responds that the facts alleged in the amended complaint show Defendants were deliberately indifferent to his serious medical and mental health needs. (Doc. 127 at 6).

The Court concludes that Plaintiff's amended complaint should be dismissed as a shotgun pleading and, alternatively, for failure to state either an Eighth Amendment or ADA claim. Further, even if not an impermissible shotgun pleading and even if Plaintiff states an Eighth Amendment claim, Plaintiff's Eighth Amendment claim is barred by qualified immunity.

---

[1] The Eleventh Circuit recently clarified that § 1997e(e) does not operate as a bar to recovery of punitive damages even in the absence of a physical injury. *See Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021) (en banc). More importantly, for reasons explained below, the Court concludes that Plaintiff fails to state a claim for relief and thus the Court need not address the merits of any particular damages sought.

## A. FAILURE TO COMPLY WITH PLEADING REQUIREMENTS

Although Plaintiff is *pro se*, he still must "conform to procedural rules." *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002).[2] Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 10(b) requires that a "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a "shotgun pleading." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (explaining that a shotgun pleading is any pleading which "fail[s] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests").

Although shotgun pleadings can take many forms, the Eleventh Circuit has identified four "rough types" of categories of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that fails to separate "into a different count each cause of

---

[2] As the Court noted in an earlier order before the undersigned was assigned to this case, Plaintiff is no novice in federal court, having filed at least seven earlier lawsuits. (Doc. 78 at 3 n.1).

action or claim for relief"; and (4) a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1321–24. The unifying characteristic of all kinds of shotgun pleadings is that they fail, in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests. *Id.* at 1323.

Defendants Godwin and Gaskin argue that Plaintiff's amended complaint is "voluminous, disorganized, rambling, and replete with conclusory allegations which lump many or all of the defendants together, making it difficult to discern what specifically is being alleged against each defendant." (Doc. 92 at 9; Doc. 97 at 10). The Court agrees. Over twenty pages of Plaintiff's amended complaint simply lists various statutes, constitutional amendments, state and federal rules, the Universal Declaration of Human Rights, and UN standards, without any explanation or illustration of how or which defendants violated the authorities. On multiple occasions, Plaintiff realleges and incorporates by reference "each and every paragraph of [the] complaint," *See* (Doc. 49 at 21, 23), and frequently cites to paragraphs 1–80 generally for support of his "claims for relief . . . for all violations." (Doc. 49 at 9); *see also* (Doc. 49 at 8, 9, 10, 11).

Additionally, Plaintiff frequently cites conclusory and immaterial facts not obviously connected to any particular alleged claim. *See, e.g.,* (Doc. 49 at 23) (stating that certain defendants "had established or permitted to become established customs, or policies . . . when they practiced and/or permitted customs, policies and/or practices

that resulted in Violations of Plaintiff's Constitutionally protected rights . . . by failing to investigate Video/Audio a wide spread of suicidal attempts and suicides," even though Plaintiff never brough suit against any defendants in their official capacities); (*id.* at 24) (stating that certain defendants acted "with deliberate indifference" and "reckless disregard which subjected [Plaintiff] and others to cruel and unusual punishment" in Plaintiff's ADA count); (*id.* at 20) (discussing "a pattern of how Defendants T. Poynter and Colonel Howard Tucker lie, falsifying documents and reports, fail to investigate complaints, creating a policy, custom, procedure to allow and condone mistreatment, cover ups, lie's [sic], abuse, suicide's [sic], and suicide attempts" in Plaintiff's Eighth Amendment claim). Ultimately, Plaintiff's amended complaint does not give Defendants adequate notice of the claims against them and the grounds upon which each claim rests. Accordingly, the Court dismisses Plaintiff's amended complaint as a shotgun pleading. *See Weiland*, 792 F.3d at 1323.

## B. FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

### 1. Legal Standard

Defendants Gaskin, Godwin, Sandvig, and Victores move to dismiss Plaintiff's Eighth Amendment deliberate indifference claim and ADA claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants Gaskin and Godwin also move to dismiss Plaintiff's request for declaratory and injunctive relief for Plaintiff's failure to state a claim, and Defendants Sandvig and Victores argue that Plaintiff's "Nature of the Relief" section—in which Plaintiff states that he seeks declaratory and

injunctive relief—fails to state a claim[3] and that Plaintiff's claims for declaratory and injunctive relief are moot. Additionally, Defendants Sandvig and Victores argue that Plaintiff's request for compensatory and punitive damages and that Plaintiff's request for criminal prosecution of Defendants fail to state a claim under Rule 12(b)(6).[4] The Court concludes that Plaintiff has failed to state a claim upon which relief can be granted for all of the above-described claims.

In deciding whether to grant a motion to dismiss on this ground, a court must accept the allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. et al. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Although the court must afford a *pro se* litigant wide leeway in pleadings, a *pro se* litigant is nonetheless required to satisfy necessary burdens in that he is "not relieved of

---

[3] Although not listed as a separate claim, under the amended complaint's "Nature of the Relief" section, Plaintiff states that he seeks declaratory relief and preliminary and permanent injunctive relief. (Doc. 49 at 51).

[4] Although Defendants Sandvig and Victores frame their dismissal argument regarding Plaintiff's claim for compensatory and punitive damages as being statutorily barred and their argument regarding Plaintiff's claim for federal prosecution against Defendants as not being legally cognizable under the statute, Defendants are ultimately arguing that Plaintiff failed to sufficiently plead claims upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

his obligation to allege sufficient facts to support a cognizable legal claim," and "to survive a motion to dismiss, a Plaintiff must do more than merely label his claims." *Johnson v. Schwarze*, No. 8:15-cv-2850-T-27TGW, 2017 WL 2303981, at *1 (M.D. Fla. May 25, 2017) (citation omitted). Dismissal is, therefore, permitted "when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Id.* (quoting *Glover v. Liggett Grp. Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)).

## 2. Eighth Amendment Deliberate Indifference Claim

In his amended complaint, Plaintiff argues that Defendants deprived him of adequate "medical/mental health treatment in deprivation of his Eight Amendment" rights. (Doc. 49 at 6). Defendants Godwin and Gaskin argue that "Plaintiff has failed to allege facts or otherwise establish that [Defendants] violated his constitutional rights." (Doc. 92 at 10; Doc. 97 at 11). And Defendants Sandvig and Victores contend that the amended complaint fails to state an Eighth Amendment claim because no facts show that they were subjectively aware of the piece of metal before Plaintiff cut himself with it, and that their job was to provide medical care to Plaintiff, not to inspect his cell or restrain him. (Doc. 110 at 8–9). The Court agrees.

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege (1) a deprivation of a right secured under the United States Constitution or federal law; and (2) that such deprivation occurred under color of state law. *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998). Plaintiff alleges that Defendants deprived him of his right to be free from cruel and unusual punishment under the Eighth Amendment. (Doc. 49 at 6–7). A

prison official violates this prohibition if he is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury. *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016); *see Farmer v. Brennan*, 511 U.S. 825, 843 (1994). To establish an Eighth Amendment claim of deliberate indifference, Plaintiff must allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) that the injury was caused by the defendants' wrongful conduct. *Lane*, 835 F.3d at 1307; *see Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). The second element of the claim "has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Lane*, 835 F.3d at 1308 (quoting *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003)).

Regarding Defendants Godwin and Gaskin, their participation in the events described in the amended complaint were minimal. They escorted Plaintiff to a dorm and placed him in a holding cell after it was determined that Plaintiff needed to be on self-harm observation. (Doc. 92 at 10; Doc. 97 at 11). Defendant Godwin told Plaintiff to "stop acting like an inmate and act like a convict." (Doc. 97 at 11). Defendant Gaskin instructed Plaintiff to remove his clothing and put on a green suicide gown. (Doc. 92 at 10). Plaintiff alleges that Defendants "all ignored him at one point or another" when he informed them that he was experiencing "psychological emergencies" and that "he had metal and was about to cut himself." (Doc. 49 at 15). When Plaintiff did obtain a piece of cloth to tie off his arm and to create a "make shift tourniquet" to give "him a better

idea of where he should cut [himself] to accomplish suicide," Defendants attempted to get the cloth away from Plaintiff. (*Id.* at 17).

Under these facts, Plaintiff has failed to sufficiently allege that Defendants Godwin and Gaskin knew of and disregarded a substantial risk of Plaintiff's health or safety or that their actions caused Plaintiff injury. *Farmer*, 511 U.S. at 837. The only paragraph that specifically mentions either Defendant Godwin or Gaskin and also describes Plaintiff's attempt to make a tourniquet and cut himself acknowledges that "Defendants . . . Godwin [and] Gaskin . . . at one point or another tried to get the cloth." (Doc. 49 at 17). Plaintiff has failed to plead facts that show Defendants Godwin and Gaskin had a subjective knowledge of a serious risk of harm and disregarded that risk through actions that constituted more than mere negligence. If anything, that element is missing because Plaintiff alleges that Defendants Godwin and Gaskin attempted to get the makeshift tourniquet away from him. Importantly, as the Court concluded in a previous order dismissing the claim against other defendants, "there is no allegation that any of the Defendants actually knew about the piece of metal in the cell." (Doc. 78 at 9). To allege a deliberate indifference claim, Godwin and Gaskin must have actually known and disregarded a substantial risk of serious harm that caused Plaintiff's injury. None is so alleged, and Plaintiff therefore fails to state a claim of deliberate indifference as to these Defendants.

Regarding Defendants Sandvig (a nursing assistant) and Victores (a nurse), there are no allegations that show they were deliberately indifferent to a serious risk of harm

to Plaintiff. When security first brought Plaintiff to the medical unit, medical staff advised the officers that Plaintiff was "on psychotropic medications for his mental illness" and was "not playing games" because he had "a history." (Doc. 49 at 9). An officer nonetheless ordered officers to escort Plaintiff to a confinement cell. (*Id.*). When Plaintiff was escorted back to the medical unit, Defendant Sandvig and Nurse Reedy called the physician who instructed them to have Plaintiff placed on self-harm observation status. (*Id.* at 11). Plaintiff was placed on observation status and ordered to remove all his clothes and put on a suicide gown. (*Id.* at 14).

While he was in the suicide observation cell, Plaintiff declared "psychological emergencies" to Defendants Sandvig and Victores (and others) and at one point stated that he had metal and was going to cut himself. (*Id.* at 15). During this encounter, Plaintiff alleges that he watched Defendant Sandvig stand at "his cell while plaintiff cut himself" and Defendant Sandvig "made comments such as 'ohh-he's just scratching'" and "[t]urn around let us see . . . we want to see you do it." (Doc. 49 at 17–18). Fatal though to Plaintiff's claim is the lack of any allegations that Sandvig saw Plaintiff with metal or actually knew that Plaintiff had metal. These comments alone do not suffice to establish subjective knowledge of a risk of serious harm and intentional disregard of that risk. To be sure, Plaintiff characterizes Defendant Sandvig's remarks as "[m]aking a joke out of the entire situation." (*Id.* at 18). Plaintiff also alleges that when he obtained the piece of cloth from another inmate and tied it around his arm, Defendants Sandvig and Victores, and others, tried to get the cloth from him. (*Id.* at 17). And after Plaintiff cut himself with

the piece of metal, Officer Dyer was able to get the metal and cloth from Plaintiff. (*Id.* at 17, 18). Defendants Sandvig and Victores cleaned Plaintiff's cut(s). (*Id.* at 18).

Under these facts, Plaintiff has failed to sufficiently allege that Defendants Sandvig and Victores actually knew of and disregarded a substantial risk to Plaintiff's health or safety. *Farmer*, 511 U.S. at 837. When Plaintiff complained he was suicidal, medical staff informed security that Plaintiff had a mental illness, contacted a physician, and had Plaintiff placed in a suicide observation cell. Plaintiff's allegation that while in the cell he told Defendants that he had a piece of metal and would cut himself is insufficient to show that Defendants deliberately disregarded a "strong likelihood" that Plaintiff would harm himself. *See Cagle v. Sutherland*, 334 F.3d 980, 986 (11th Cir. 2003) ("[I]n a prisoner suicide case. . .[t]he deliberate indifference standard 'requires a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur.'") (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir.1990) (emphasis and first alteration in original)). There are no allegations that these Defendants were actually aware of metal in the cell or what kind of piece of metal he had that could cause a substantial risk of harm to him. Further, regarding Plaintiff's allegations about Defendant Sandvig's comments outside of Plaintiff's cell, these comments do not demonstrate that Sandvig knew that Plaintiff had a piece of metal and was cutting himself. Rather, these comments suggest that Sandvig did not know that Plaintiff was actually cutting himself because she said that he was "just scratching." (Doc. 49 at 17–18). They also suggest that Plaintiff was hiding what he was doing, as he alleges that Sandvig requested him to "turn around" so she

could "see." (*Id.*). And Plaintiff alleges that once Defendants saw that Plaintiff had the piece of cloth and piece of metal, they took action to get those items from him. Plaintiff therefore fails to state a claim of deliberate indifference as to Defendants Sandvig and Victores.

### 3. ADA Claim

In his amended complaint, Plaintiff alleges that Defendants violated his rights under the ADA because they failed to accommodate his mental impairment (suicidal ideations) by failing to take further measures, such as restraints or emergency treatment, to prevent him from harming himself. (Doc. 49 at 21–24). Defendants argue that Plaintiff's ADA claim must be dismissed because causes of action under the ADA are limited to actions against public entities and may not be brought against individuals. (Doc. 92 at 15; Doc. 97 at 16; Doc. 110 at 11). The Court agrees.[5]

Plaintiff sues Defendants solely in their individual capacities. (Doc. 1, pp. 3–5). There is no individual liability under the ADA. *See Owens v. Sec'y, Fla. Dep't of Corr.*, 602 F. App'x 475, 478 (11th Cir. 2015) (affirming dismissal of claims under the ADA against defendants in their individual capacities because "only public entities may be liable under the ADA"); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 2007) (holding that the ADA "does not provide for individual liability, only employer liability"); *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) ("[T]here is no individual capacity liability under Title

---

[5] Plaintiff does not oppose Defendants' motions to dismiss his ADA claim in the amended complaint. *See* (Doc. 127).

II of the ADA or RA.") (citation omitted). Plaintiff therefore fails to state a claim under the ADA against Defendants.

Because Plaintiff is unable to state a claim under the ADA against the Defendants as a matter of law, Plaintiff's ADA claim will be dismissed with prejudice. *See Foman v. Davis*, 371 U.S. 178, 182 (noting that futility of amendment would provide ground for dismissal with prejudice); *see also L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1328 (11th Cir. 2020) (concluding that the district court was "correct to dismiss [certain] claims with prejudice because leave to amend would be futile").

### 4. Declaratory and Injunctive Relief

Plaintiff alleges that he "seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202" based on Defendants' violations of Plaintiff's rights "under the Florida Constitution, Florida Mental Health Act, Florida Laws, Rules, Policies, and Procedures, as well as under several Acts, Laws, United Nations Treaties, and of the Constitution of the United States." (Doc. 49 at 51). Plaintiff also states that he "seeks preliminary and permanent injunctive relief pursuant to 28 U.S.C. §§ 2283 and 2284, as well as under Rule 65, Fed. R. Civ. P." (*Id.*). Defendants Godwin and Gaskin argue that "Plaintiff fails to properly state a claim for either declaratory or injunctive relief" because "Plaintiff fails to allege any facts in this section, let alone facts which demonstrate an immediate controversy that warrants declaratory or injunctive relief."[6] (Doc. 92 at 13–14; Doc. 97

---

[6] Because Defendants entitle their memoranda sections "Declaratory and Injunctive Relief" and specifically argue that "Plaintiff fails to properly state a claim for either declaratory of injunctive relief,"

at 14–15). And Defendants Sandvig and Victores argue that "Plaintiff's claims for injunctive and declaratory relief are moot as he has transferred prisons." (Doc. 110 at 15). The Court agrees.

A declaratory judgment may be issued only in the case of an actual controversy. *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999). This means there must be a substantial continuing controversy between two adverse parties, and the plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. *Id.* "[T]he continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.* As to injunctive relief, this form of relief should be granted only upon a showing of: (1) a clear legal right to the relief requested; (2) that there is an inadequate remedy at law; and (3) that irreparable harm will occur absent injunctive relief. *See Liberty Counsel v. Fla. Bar Bd. of Governors*, 12 So. 3d 183 (Fla. 2009).

Plaintiff fails to connect any facts to the elements required by the relief he seeks. For example, Plaintiff fails to plead any facts that show a continuing controversy between the parties required for declaratory judgment and fails to allege any facts showing that there is an inadequate remedy at law required by injunctive relief. Without any facts to support Plaintiff's conclusory allegations, these claims fail to state a claim for relief. *See*

---

(Doc. 92 at 13; Doc. 97 at 14), the Court does not construe Defendants' motions to dismiss as also moving for dismissal of the "Claims for Relief" section on pages 26–48 of the amended complaint under Rule 12(b)(6). Nonetheless, these claims are subject to dismissal under the Court's conclusion that the amended complaint should be dismissed as a shotgun pleading, as discussed in Section II(A) above.

*Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir.1984). Moreover, because Plaintiff was transferred from Zephyrhills Correctional Institution (where all the alleged incidents occurred) to Florida State Prison (Doc. 49 at 1), his claims for declaratory and injunctive relief against Defendants are moot. *See Mann v. McNeil*, 360 F. App'x 31, 32 (11th Cir. 2010) ("The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief."). Accordingly, Plaintiff's claims for declaratory and injunctive relief are dismissed.

### 5. Request for Criminal Prosecution

Plaintiff requests "[f]ederal criminal prosecution for the defendants pursuant to 42 U.S.C. § 1987." (Doc. 49 at 52). Defendants Sandvig and Victores correctly argue that this requested remedy must be dismissed. (Doc. 110 at 16). *See Linda R .S. v. Richard D.*, 410 U.S. 614, 619 (1973) (a "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."); *Sattler v. Johnson*, 857 F.2d 224, 226–27 (4th Cir.1988) (holding that a private citizen has no constitutional right to have other citizens, including state actors, criminally prosecuted); *Thibeaux v. U.S. Atty. Gen.*, 275 F. App'x 889, 892 (11th Cir. 2008) ("The decision to investigate and prosecute crimes is entrusted to the executive branch.") (citing *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000); U.S. Const., art. II, § 3).

### C. QUALIFIED IMMUNITY

Even if Plaintiff did state an Eighth Amendment claim under Rule 12(b)(6), Plaintiff's claim would still fail because Defendants are entitled to qualified immunity.

Qualified immunity protects a government official acting within his discretionary authority from civil lawsuits unless his conduct violates a statutory or constitutional right clearly established when the alleged violation occurred. *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

If an official is engaged in a discretionary function, the burden shifts to a plaintiff to overcome the official's qualified immunity by meeting a two-part test. *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). First, he must show that the defendant violated a constitutional right. *Id.* This step requires a court to analyze the specific constitutional right at issue and decide as a matter of law if the defendant violated such a right. *Id.* at 1156–57. Second, if a violation occurred, he must then show that the right was clearly established at the time of the incident. *Id.* at 1156.

Defendants were engaged in discretionary functions. Discretionary functions are actions taken by a government official during "the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988). Plaintiff's allegations all involve actions taken by the Defendants as correctional officers or medical personnel. Consequently, the burden shifts to Plaintiff to show that Defendants violated a clearly established constitutional right. Plaintiff has not done so.

This first step of the qualified immunity inquiry mirrors the Rule 12(b)(6) analysis, so the below is largely repetitive of the above. Plaintiff contends that Defendants were

deliberately indifferent to his serious medical and mental health needs in violation of the Eighth Amendment. (Doc. 49 at 6–20). Plaintiff bases this contention on actions or omissions by Defendants leading to Plaintiff cutting his arm with a metal object. To establish deliberate indifference to a serious medical need a plaintiff must show: (1) that there was an objectively serious medical need; (2) subjectively, that the defendant was deliberately indifferent to that need; and (3) causation between that indifference and the plaintiff's injury. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). For the subjective component of a deliberate indifference claim, a plaintiff must show "that the response made by [the defendant] to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotations omitted).

The "deliberate indifference standard is 'a difficult burden for a plaintiff to meet[.]'" *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990)). Simply put, "mere misdiagnosis or subpar care, even if it rises to the level of medical malpractice, does not constitute deliberate indifference." *Simmons v. Fla. Dep't of Corr.*, No. 5:14-CV-438-Oc-39PRL, 2015 WL 3454274, at *10 (M.D. Fla. May 29, 2015). Further, "whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545.

Taking the allegations in the amended complaint as true and construing them in the light most favorable to Plaintiff, Defendants were not deliberately indifferent to Plaintiff's medical problems. Plaintiff alleges, in pertinent part, he was taking psychotropic medications and that after a doctor placed him on self-harm observation status (SHOS), he was placed in a holding cell outside of L-dormitory (Doc. 49 at 9, 11–12, ¶¶ 27, 29).[7] When Defendants Godwin and Gaskin, and other officers, approached the holding cell and removed Plaintiff to escort him to another cell, Plaintiff told the officers that he was hearing voices that were telling him to kill himself and that he was going to kill himself if locked in the cell (*Id.* at 13, ¶ 35).

After the officers escorted Plaintiff to L-dormitory, Defendants Godwin and Gaskin escorted Plaintiff to his cell (*Id.* at 14, ¶ 39). Once inside the cell, after he was ordered to kneel on the ground, Plaintiff threatened to commit suicide (*Id.* at ¶ 40). Defendant Godwin responded by stating "stop acting like an inmate and act like a convict." (*Id.*). Despite having seen that Plaintiff had blood on his ankles, Defendants Godwin and Gaskin provided no medical treatment to Plaintiff. (*Id.*).

Plaintiff alleges that the cell in which he was placed "was not a 'SHOS' equipped cell certified for individuals with self harm observational status." (*Id.* at ¶ 41). Moreover, he alleges that no one inspected the cell or searched it for contraband before he was placed in the cell (*Id.*). Defendants Godwin and Gaskin, however, ordered Plaintiff to

---

[7] L-dormitory "housed. . .the most extreme individuals with a variety of mental illnesses. . . ." (Doc. 49 at16, ¶ 51).

remove and give them his clothing and put on a "suicide green smock gown." (*Id.* at ¶ 44). Although they initially neglected to take Plaintiff's boxer shorts and socks, they retrieved them after Plaintiff informed them that he still had those items (*Id.*).

Between "12:00 p.m. and 5:00 p.m." Plaintiff "continued to declare psychological emergencies" which Defendants, and others, "ignored . . . at one point or another. . . ." (*Id.* at 15, ¶ 46). At an unspecified time, Plaintiff found "a piece of a lighter top metal" which he sharpened on the floor (*Id.* at ¶ 45). He felt depressed and heard voices that told him to kill himself or the Defendants would kill him (*Id.*). Although he told Defendants and others that he had metal and was going to cut himself, they ignored him (*Id.* at ¶ 47).

At approximately 5:00 p.m., Plaintiff called out to another inmate to give him a piece of a ripped towel to use as a tourniquet on his arm that would make it easier to cut himself and commit suicide. (*Id.* at 17, ¶ 56). At approximately 5:30 p.m., an inmate slid the piece of cloth under Plaintiff's cell door. (*Id.* at ¶ 59). Officer Dumas saw this and ordered Plaintiff to give him the cloth. (*Id.*). Plaintiff, however, denied having the cloth. (*Id.*). Defendants and other officers also attempted to get Plaintiff to give them the cloth but Plaintiff refused. (*Id.* at ¶ 60). Plaintiff tied the cloth around his arm and started cutting himself. (*Id.* at ¶ 61). The officers did not use force to try to stop him (*Id.*). Defendant Sandvig saw Plaintiff and said "oh, he's just scratching" and "turn around let us see . . . we want to see you do it." (*Id.* at ¶ 62).

Plaintiff began feeling weak and dizzy because he was losing blood (*Id.* at 18, ¶ 63). He stopped cutting himself because he realized killing himself would devastate his family (*Id.* at ¶ 65). He gave the piece of metal and the cloth to Officer Dyer, and he was handcuffed and removed from the cell. (*Id.* at ¶ 66). He was taken to the "day room" where Defendants Sandvig and Victores cleaned his cut(s). (*Id.* at ¶¶ 67–68).

For reasons explained earlier in this order, these allegations fail to show that Defendants acted with deliberate indifference to a serious medical need of Plaintiff. "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if he is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016); *see Farmer v. Brennan*, 511 U.S. 825, 843 (1994). A violation requires that the officials had a "subjective knowledge" of that serious risk of harm and "disregarded that risk" "by conduct that is more than mere negligence." *Lane*, 835 F.3d at 1307. "[P]rison officials have an obligation to take action or to inform competent authorities once the officials have knowledge of a prisoner's need for medical or psychiatric care." *Waldrop v. Evans*, 871 F.2d 1030, 1036 (11th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).

Defendants took reasonable action in response to Plaintiff's actions and provided Plaintiff with access to medical care. When Plaintiff arrived at L-dormitory, Defendants Godwin and Gaskin placed him in an observation cell, ordered him to remove all his clothes, and placed him in a "suicide green smock gown." These actions were done— per the amended complaint—with knowledge of his mental health history, his current

medication for related problems, and despite that officers thought he was lying to avoid discipline. Although Defendants Godwin and Gaskin initially neglected to take Plaintiff's boxer shorts and socks, they immediately returned to the cell to retrieve those items, and no harm befell Plaintiff as a result. After Officer Dumas saw another inmate slide a piece of cloth under Plaintiff's cell door, Defendants attempted to get the cloth from Plaintiff. And after Plaintiff began to scratch himself with the metal, the officers were able to get Plaintiff to hand over the metal, and Defendants Sandvig and Victores cleaned his cut(s). Plaintiff then was placed in psychiatric restraints and put on self-harm observational status.

Plaintiff points out that at various points Defendants' actions could have been more thorough. But whether Defendants could have done more to help Plaintiff, each Defendant acted to prevent Plaintiff from harming himself after learning that he had cloth in his cell and intended to harm himself with a piece of metal. Plaintiff has failed to prove that Defendants' responses were so poor as to constitute "an unnecessary and wanton infliction of pain, and not merely accidental inadequacy." *Adams*, 221 F.3d at 1258. He alleges that Defendants, and other officers, ignored him or did not believe him when he told them that he had metal and was about to cut himself.[8] (Doc. 49 at 15, ¶ 47).

---

[8] In his response to Defendants' motions to dismiss, Plaintiff appears to assert that when he told Defendants that he had a piece of metal, he also showed them the metal (Doc. 127, pp. 7–8). This new factual allegation, offered for the first time in Plaintiff's opposition, will not be considered. *See Erb v. Advantage Sales & Mktg. LLC*, No. 6:11-CV-2629-SLB, 2012 WL 3260446, at *3 (N.D. Ala. Aug. 3, 2012) ("Motions to dismiss brought pursuant to Rule 12(b)(6) test the sufficiency of the factual allegations contained in the complaint, and a party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion.") (citation and internal quotation marks omitted); *accord*

Defendants must have *actually* known about the substantial risk that Plaintiff would harm himself to be deliberately indifferent. "Proof that the defendant should have perceived the risk, but did not, is insufficient." *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir.1999). Once Defendants Godwin and Gaskin, and the other officers, actually saw the metal, they acted to retrieve the metal from Plaintiff, and Defendants Sandvig and Victores timely tended to his injuries.

Plaintiff further alleges that Defendants Godwin and Gaskin were deliberately indifferent because "[u]pon information and belief [the cell] was never inspected nor searched for contraband per rules and policy . . ." before Plaintiff was placed into the cell (Doc. 49 at 14). This allegation is speculative because Plaintiff provides no facts to support his belief that the cell was not inspected, and that Defendants had the responsibility to inspect the cell. And even if the allegation is not speculative, it constitutes, at worst, negligence rather than deliberate indifference. *See, e.g., Estate of Schroeder v. Gillespie Cty.*, 23 F. Supp. 3d 775, 784–85 (W.D. Tex. 2014) (finding correctional officer's failure to enter cell of suicidal prisoner to inspect for potentially harmful objects "arguably was negligent behavior" but did not constitute deliberate indifference"). "It is well settled that a showing of mere negligence . . . is insufficient to recover on a § 1983 claim. A showing of conscious or callous indifference is required."

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.1988) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.), *cert. denied*, 470 U.S. 1054 (1984))).

*Pintado v. Dora*, No. 09-23697-CIV-LENARD, 2011 WL 794607, at *10 (S.D. Fla. Jan. 28, 2011), *adopted in* 2011 WL 777887 (S.D. Fla. Mar. 1, 2011) (citations omitted).

Finally, to the extent Plaintiff alleges that Defendants Godwin and Gaskin were deliberately indifferent because they failed to get medical attention for him after they saw "his bloody ankles" (Doc. 49 at 14, ¶ 40), the allegation is insufficient to establish that he had a serious medical need. "In general, serious medical needs are those requiring immediate medical attention." *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010) (citation and internal quotation marks omitted). Plaintiff makes no allegation that any injuries to his ankles required medical attention at all, let alone immediate attention. *See Youmans*, 626 F.3d at 565–66.

Regarding Defendants Sandvig and Victores, Plaintiff has failed to establish that Defendants were deliberately indifferent to a serious medical need. To the contrary, Plaintiff alleges that Sandvig and Victores "tried to get the cloth" from Plaintiff when he was using it as a tourniquet and that they "were waiting for [him] in the day room at a table" to tend to his cut(s). (Doc. 49 at 17–18). And to the extent that Plaintiff alleges that Defendants Sandvig and Victores were deliberately indifferent because they "personally knew" that inmates in Plaintiff's dormitory were mentally ill yet "ignored . . . [Plaintiff's pleas] for help" (*Id.* at 16), that allegation is contradicted by Plaintiff's own recounting of how these medical providers assisted him throughout the evening. More importantly for qualified immunity purposes, Plaintiff has identified no caselaw that requires nurses to believe all statements made by mentally ill inmates, particularly when

those same inmates are alleging hallucinations and that the nurses are aware the inmate is on psychotropic medication. Nor has Plaintiff identified caselaw that makes it a clearly established violation of the Eighth Amendment when where there are no allegations that the nurses actually saw or knew the inmate possessed a harmful or dangerous object. Accordingly, Plaintiff cannot show that Defendants Sandvig and Victores violated clearly established law by the Supreme Court.

Because the Defendants were not deliberately indifferent to Plaintiff's medical needs, Defendants have not violated Plaintiff's Eighth Amendment rights. Moreover, even if Plaintiff has established an Eighth Amendment violation, Plaintiff fails to show that it was clearly established by Supreme Court precedent that this set of circumstances (vis-à-vis any of the Defendants) violates the Eighth Amendment. Therefore, Defendants Godwin, Gaskin, Sandvig, and Victores are entitled to qualified immunity. Those claims will therefore be dismissed with prejudice.

## III. CONCLUSION

The Court concludes that Plaintiff's amended complaint is a shotgun pleading; that Plaintiff has failed to state an Eighth Amendment deliberate indifference claim and an ADA claim; that Defendants are entitled to qualified immunity; and that Plaintiff's request for injunctive and declaratory relief and request for criminal charges against Defendants must be dismissed with prejudice. Accordingly, Defendant Gaskin's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law (Doc. 92), Defendant Officer Godwin's Motion to Dismiss Plaintiff's Amended Complaint and

Memorandum of Law (Doc. 97), and Defendants Paula Sandvig and RN Moises Victores' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 110), are **GRANTED**. Plaintiff's Motion to Compel FDOC to Provide Access to Court (Doc. 129) is **DENIED**.[9] The claims against Defendants Godwin, Gaskin, Sandvig, and Victores are **DISMISSED WITH PREJUDICE**.

      **ORDERED** in Tampa, Florida, on June 3, 2021.

Kathryn Kimball Mizelle
United States District Judge

cc: Timothy Alan Connell, *pro se*
     Counsel of Record

---

[9] Plaintiff recently filed a motion alleging that Florida State Prison has denied him access to the law library and thereby has hampered his ability to adequately litigate this lawsuit. Not only has Plaintiff's responses to the pending motions demonstrated the opposite, *see* (Doc. 127) (supporting responses with numerous case citations), this motion raises new claims unconnected to the underlying allegations and well outside of the relief sought in the amended complaint. If Plaintiff wishes to pursue these new claims, he must file a separate action addressing them and specifically making factual allegations that identify how each defendant's actions are related to each claim.